## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JUAN CRUZ and EMILY LOPEZ-CRUZ, | ) | |
| *Plaintiffs*, | ) | |
| | ) | 3:22-CV-1081 (SVN) |
| v. | ) | |
| | ) | |
| SIGNIFY NORTH AMERICA | ) | |
| CORPORATION *formerly known as* | ) | |
| *Philips Lighting N.A. Co.*, GEORGE | ) | |
| HARBT, DAMIAN FRITZ, and | ) | May 17, 2023 |
| CYNTHIA BYRD, | ) | |
| *Defendants*. | ) | |

## RULING AND ORDER ON PLAINTIFFS' MOTION TO AMEND AND DEFENDANTS' MOTION TO DISMISS

Sarala V. Nagala, United States District Judge.

In this diversity action, Plaintiffs Juan Cruz and Emily Lopez-Cruz allege that Defendant Signify North America Corporation, formerly known as Philips Lighting N.A. Co. ("Signify"), and Defendants George Harbt, Damian Fritz, and Cynthia Byrd (the "Individual Defendants" and, together with Signify, "Defendants") intentionally destroyed evidence and committed perjury in a civil action pending in Connecticut Superior Court.  In their eighty-two-count complaint, Plaintiffs assert claims against all Defendants for intentional and negligent spoliation of evidence, negligence, intentional and negligent infliction of emotional distress, fraud, violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq.*, bad faith, conspiracy, and abuse of process.  Plaintiffs also assert claims against Signify under a theory of *respondeat superior* liability.

Presently pending before the Court are Defendants' motion to dismiss Plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), ECF No. 13, and Plaintiffs'

motion to amend their complaint to add allegations and claims against the attorney and firm that previously represented Signify in the underlying state court action, ECF No. 33.

For the reasons described below, Plaintiffs' motion to amend is DENIED, and Defendants' motion to dismiss is GRANTED.  Plaintiffs' complaint is thus DISMISSED.

## I.       FACTUAL BACKGROUND

Plaintiffs' complaint ("Compl."), ECF No. 1-1, alleges the following sequence of events.[1] On September 19, 2017, Plaintiff Cruz was paralyzed when a full pallet of Signify product fell on him from an upper storage rack at a warehouse in Hartford, Connecticut.  *Id.* ¶ 11.  On March 15, 2018, Plaintiffs initiated a lawsuit in Connecticut Superior Court against Signify and multiple other defendants, alleging, among other things, that Cruz's paralysis and attendant injuries were caused by Signify's negligence.  *Id.* ¶¶ 13–15.  Plaintiffs' allegations in the state court action included, for example, that Signify failed to ensure that pallets containing its products were packed safely and securely.  *Id.* ¶ 16.  Plaintiff Lopez-Cruz, who is Cruz's spouse, asserted a loss of consortium claim in the state court action.  *Id.* ¶¶ 2, 14.

On September 5, 2019, Plaintiffs deposed Defendant Harbt, Signify's Director of Logistics for North America, after Signify designated him as its corporate representative regarding the chain of custody of the product that fell on Cruz.  *Id.* ¶¶ 36–37.  Harbt testified that, based on the appearance of the product in a photograph taken by the Occupational Safety and Health Administration ("OSHA"), he had serious doubts about whether the product was shipped from Signify's warehouse in Mountain Top, Pennsylvania.  *Id.* ¶ 38.  Specifically, Harbt testified that,

---

[1] To the extent Defendants move to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws inferences from those allegations in the light most favorable to Plaintiffs.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To the extent Defendants move to dismiss pursuant to Rule 12(b)(2), the Court construes all pleadings and affidavits in the light most favorable to Plaintiffs and resolves all doubts in Plaintiffs' favor.  *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).  Insofar as any affidavits or other attachments to the parties' briefing are relevant to the Court's consideration of the issues addressed in this ruling, they are discussed below.

while certain green banding was visible in the OSHA photograph, *id.* ¶ 44, the Mountain Top facility had never used green banding of any kind on any product that it shipped, *id.* ¶ 38.

Based on Harbt's representations—and believing that the product that fell on Cruz had been repackaged or modified after it left Signify's custody in September of 2017—Plaintiffs joined three additional parties, including the trucking company that purportedly shipped the product, in the state court action. *Id.* ¶ 40. Plaintiffs later withdrew the claims against these additional parties after finding no evidence that Signify's product was damaged, modified, or repackaged after it left its Mountain Top warehouse. *Id.* ¶ 41. The parties in the state court action subsequently deposed twenty witnesses in an attempt to discern how the product fell and paralyzed Cruz. *Id.* ¶ 42.

On January 27, 2021, Plaintiffs' counsel inspected the Mountain Top warehouse with Plaintiffs' packaging expert. *Id.* ¶ 43. The inspection was also attended by: Attorney Vossler of Howd & Ludorf, LLC, who served as Signify's counsel in the state court action; Defendant Byrd, who serves as Signify's Mountain Top Operations Manager; Defendant Fritz, who serves as Signify's Mountain Top Warehouse Manager; and Harbt. *Id.* ¶ 45. Signify knew that Plaintiffs' counsel and expert would be inspecting the warehouse because the parties had agreed to the scope of the inspection two weeks in advance. *Id.* ¶¶ 44, 46. During the inspection, the upper racks of the warehouse were empty, and no green bands were visible on any product in the warehouse. *Id.* ¶ 51. Later, a review of photographs taken during the inspection revealed a green band hanging out of a trash can in the Signify warehouse, *id.* ¶ 52; Plaintiffs claim that this band was identical to the band on the product in the OSHA photograph, *id.* ¶ 53.

In March of 2021, Signify's expert, Walter J. Girardi, inspected and photographed the Mountain Top facility, accompanied by Byrd and Fritz. *Id.* ¶¶ 54–57. Signify subsequently disclosed Girardi as its expert, and Plaintiffs requested the photographs Girardi took during his

inspection.  *Id.* ¶ 58.  During a deposition, Girardi later testified that he did not see any green banding of any kind during his inspection of the Mountain Top facility, and that Byrd and Fritz had told him that there had never been any product at the Mountain Top facility with green banding on it.  *Id.* ¶¶ 59–61.  Product with green banding, however, was visible in five of the seventy-four photographs Girardi took during his inspection.  *Id.* ¶¶ 56, 63–64.  By comparing Girardi's photographs with photographs taken during their own inspection of the Mountain Top warehouse, Plaintiffs concluded that green-banded product had been stored on a rack that was empty during their inspection in January of 2021.  *Id.* ¶ 67.

Plaintiffs thereafter requested to depose Byrd and Fritz.  *Id.* ¶ 68.  During their depositions, both Byrd and Fritz testified that there was no green banding of any kind on any product at the Mountain Top facility, before or after the incident that paralyzed Cruz.  *Id.* ¶¶ 70–74.  When asked, Fritz had no explanation for how a green band ended up in the trash at the Mountain Top facility, and he denied that he or Harbt had instructed anyone to remove banding from packages in the warehouse in advance of Plaintiffs' inspection in January of 2021.  *Id.* ¶¶ 75–77.

Based on these allegations, Plaintiffs assert that Signify, Harbt, Fritz, and Byrd perpetrated a scheme to destroy and hide evidence of the green banding, and then to lie about it, in order to avoid liability in the state court action.  *Id.* ¶¶ 78–79.

## II.    PROCEDURAL HISTORY

Plaintiffs initiated this action by filing a complaint in Connecticut Superior Court against Defendants in July of 2022, about six weeks before trial in the underlying action, and Signify thereafter timely removed the case to federal court.  Not. of Removal, ECF No. 1, at 1.  Defendants then responded to Plaintiffs' complaint by filing their present motion to dismiss, ECF No. 13, followed by a consent motion to stay discovery pending the resolution of their dismissal motion,

ECF No. 19.  The Court granted Defendants' consent motion, and discovery is presently stayed. ECF No. 22.

In their opposition to Defendants' motion to dismiss, Plaintiffs requested that the Court hold a status conference to discuss their intention to join Attorney Vossler and Howd & Ludorf, LLC (the "Howd Parties"), the attorney and firm that previously represented Signify in the related state court action, as defendants in this action.  ECF No. 27 at 4.  Plaintiffs asserted that, because Vossler—like Plaintiffs—is domiciled in Connecticut, the Court would lose diversity jurisdiction over this action and Defendants' motion to dismiss would become moot if Vossler were to be joined as a defendant.  *Id.*  The Court held a status conference on November 17, 2022, and set a deadline of November 30, 2022, for Plaintiffs to amend their complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).  ECF No. 31.  The Court further ordered that any motion to amend the pleadings filed after that date would be governed by the good cause standard in Federal Rule of Civil Procedure 16(b).  *Id.*  Plaintiffs thereafter filed their present motion to amend on November 30, 2022.  ECF No. 33.

### III.   PLAINTIFFS' MOTION FOR LEAVE TO AMEND

Plaintiffs seek to amend their complaint to add the Howd Parties as defendants, and to assert various allegations pertaining to events that purportedly occurred during the trial in the underlying state court proceeding.  Defendants oppose Plaintiffs' request, arguing the Plaintiffs' proposed amendments would be futile, and that Plaintiffs' request is both untimely and motivated by a bad faith attempt to destroy diversity jurisdiction in this action.

Because the amendments, if allowed, would render the Court without subject matter jurisdiction to rule on any other matters, the Court addresses the motion for leave to amend first. For the reasons below, the Court finds that Plaintiffs' proposed amendments would be futile and

that, even if amendment were not futile, joinder of the Howd Parties would not comport with principles of fundamental fairness.   Accordingly, Plaintiffs' motion for leave to amend is DENIED.

A.  Legal Standard

1.  *Federal Rule of Civil Procedure 15(a)*

Federal Rule of Civil Procedure 15(a) governs amendments before trial.   Rule 15(a)(1) addresses time periods during which a party may amend its pleading once as a matter of course, which have elapsed in this case.   Rule 15(a)(2) states that "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."   Rule 15(a)(2) further provides that "[t]he court should freely give leave when justice so requires."   Addition of a party also implicates Federal Rule of Civil Procedure 21, which provides, in pertinent part, that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party."   The standards governing motions to amend under Rule 15 "apply with equal force to motions to add parties under Rule 21."  *Trs. of I.B.E.W. Loc. Union No. 488 Pension Fund v. Norland Elec., Inc.*, No. 3:11-CV-709 (CSH), 2013 WL 785333, at *1 (D. Conn. Mar. 1, 2013).

Rule 15(a)(2) is a "liberal" and "permissive" standard, and "'the only grounds on which denial of leave to amend has long been held proper' are upon a showing of 'undue delay, bad faith, dilatory motive, [or] futility.'"  *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021) (alteration in original) (quoting *Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190

(2d Cir. 2015)).[2]  Further, it is improper for the Court to deny a motion to amend based solely on delay "absent a showing of bad faith or undue prejudice."  *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) ("[M]ere delay, . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." (alteration in original)).

"The party opposing a motion to amend bears the burden of establishing that amendment would be futile."  *Brach Fam. Found., Inc. v. AXA Equitable Life Ins. Co.*, No. 16-CV-740 (JMF), 2018 WL 1274238, at *1 (S.D.N.Y. Mar. 9, 2018).  "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to [Fed. R. Civ. P.] 12(b)(6)."  *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  Accordingly, "a proposed claim is futile if, accepting the facts alleged by the party seeking amendment as true and construing them in the light most favorable to that party, it does not 'plausibly give rise to an entitlement to relief.'"  *Brach Fam. Found., Inc.*, 2018 WL 1274238, at *1 (quoting *Iqbal*, 556 U.S. at 679).

If, however, "the underlying facts or circumstances relied upon by a plaintiff *may* be a proper subject of relief," the plaintiff "ought to be afforded an opportunity to test his claim on the

---

[2] *Sacerdote* addressed whether Rule 15(a)(2)'s liberal and permissive standard or Rule 16(b)'s "good cause" standard should apply to an amendment sought after a scheduling order's deadline for amendments has passed.  As long as the scheduling order does not set forth a date after which no further amendments will be permitted without good cause, Rule 15(a)(2)'s standard should apply.  *Sacerdote*, 95 F.4th at 115.  Here, Plaintiffs have briefed their motion to amend under the more stringent Rule 16(b) standard, while Defendants' briefing applies Rule 15(a)(2).  Although the Court's order on pretrial deadlines, ECF No. 8, set an October 25, 2022, deadline for motions relating to joinder of parties or amendment of the pleadings, that order did not state that that all amendments after October 25 were prohibited or that any such motions filed after that date would be subject to the good cause standard in Rule 16(b).  Moreover, in its order at ECF No. 31, the Court specifically stated that Plaintiffs could move to amend the complaint pursuant to Rule 15(a)(2) by November 30, 2022, and that any motion to amend the pleadings filed *after* that date would be governed by the good cause standard in Rule 16(b).  Plaintiffs filed their motion to amend on November 30 and, therefore, Rule 15(a)(2)'s more lenient standard is applicable here.

merits." *United States v. Cont'l Ill. Nat'l Bank & Tr. Co. of Chi.*, 889 F.2d 1248, 1254 (2d Cir.

1989) (emphasis added) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Therefore, the Court

"should dismiss claims for futility 'only where it is beyond doubt that the plaintiff can prove no

set of facts in support of his amended claims.'" *Richard Mfg. Co. v. Richard*, 513 F. Supp. 3d 261,

290 (D. Conn. 2021).

### 2.  Section 1447(e)

In a removed diversity action such as this, where joinder of non-diverse defendants would

deprive the Court of subject matter jurisdiction over the action, the Court must also assess whether

joinder is appropriate under 28 U.S.C. § 1447, which pertains to procedure after removal.  Section

1447(e) provides that, "[i]f after removal the plaintiff seeks to join additional defendants whose

joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder

and remand the action to the State court."

The decision whether to allow joinder of the new, non-diverse parties "is within the sound

discretion of the trial court."  *Briarpatch Ltd. v. Pate*, 81 F. Supp. 2d 509, 515 (S.D.N.Y. 2000).

In exercising such discretion, district courts in this Circuit have considered "whether permitting

joinder will comport with principles of fundamental fairness."  *Wyant v. Nat'l R.R. Passenger*

*Corp.*, 881 F. Supp. 919, 923 (S.D.N.Y. 1995); *see id.* at 922 (noting that courts "weigh the

competing interests in efficient adjudication and the need to protect diversity jurisdiction from

manipulation").[3]  The factors to consider in assessing fundamental fairness are:  "(1) any delay, as

well as the reason for delay, in seeking joinder; (2) resulting prejudice to [the] defendant; (3) [the]

---

[3] District courts in this Circuit have commonly looked to whether joinder is appropriate under Federal Rule of Civil
Procedure 20 before turning to an assessment of fundamental fairness in relation to section 1447(e).  *See Briarpatch
Ltd.*, 81 F. Supp. 2d at 515 (collecting cases); Fed. R. Civ. P. 20(a)(2) ("Persons . . . may be joined in one action as
defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or
arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law
or fact common to all defendants will arise in the action.").  Here, Defendants do not assert that joinder would be
improper under Rule 20 and, as a result, the Court does not address this issue.

likelihood of multiple litigation; and (4) [the] plaintiff's motivation for the amendment."
*McWilliams v. Gonzalez*, No. 3:21-CV-01135 (VAB), 2022 WL 1718037, at *5 (D. Conn. May 27, 2022).

    B.  <u>Discussion</u>

In their proposed amended complaint ("Am. Compl."), ECF No. 35-3, Plaintiffs seek to assert new allegations against the Howd Parties related to the trial in the underlying Connecticut Superior Court action.[4]  Specifically, Plaintiffs seek to assert the following.  Just prior to the start of trial in September of 2022, "the defendants"[5] in the underlying state court action, presumably through Attorney Vossler, disclosed chain of custody documents identifying the trucking company that transferred the product at issue.  *Id.* ¶¶ 42, 81.  Then, during trial, "the defendants," again presumably through Vossler, presented a photo of "exemplar packaging" taken by Fritz; Plaintiffs claim this photo was misleading because it was not indicative of the type of packaging Signify shipped to Hartford around the time of Cruz's injury.  *Id.* ¶¶ 83–84.  Plaintiffs further assert that, after trial concluded in October of 2022, "the defendants," again presumably through Vossler, disclosed for the first time that Signify had an additional €130,000,000 in insurance coverage, the nature and extent of which had previously been misrepresented.  *Id.* ¶¶ 81, 85–86.  Plaintiffs' proposed amended complaint includes the original eighty-two counts, plus new claims against the Howd Parties for negligent and intentional infliction of emotional distress and abuse of process.  *Id.* at 28–30.

---

[4] In addition to the claims regarding the state court trial, Plaintiffs assert that Attorney Vossler was present during Girardi's inspection of the Mountain Top facility in March of 2021.  Am. Compl. ¶ 58.

[5] Neither paragraph 42 nor paragraphs 81 through 86 of Plaintiffs' proposed amended complaint specifically reference Vossler.  Rather, the allegations reference "the defendants" in the underlying state court action.  Based on the nature of these allegations and Plaintiffs' briefing on their present motion, the Court assumes that these allegations pertain predominantly to Attorney Vossler and, by association, Howd & Ludorf, LLC.  *See* ECF No. 33 at 5 ("[F]ollowing trial, Attorney Vossler disclosed, for the first time, an additional €130,000,000.00 in insurance coverage that had not been disclosed prior to trial.").

For the reasons below, the Court finds that Plaintiffs' proposed amendments would be futile because they are barred by the litigation privilege.  The Court further finds that, even if amendment were not futile, principles of fundamental fairness do not favor permitting joinder of the Howd Parties in this action.  Accordingly, Plaintiffs' request to amend is denied.

*1.  Futility*

As noted, in their proposed amended complaint, Plaintiffs seek to assert three new claims against the Howd Parties:   intentional infliction of emotional distress; negligent infliction of emotional distress; and abuse of process.  As set forth below, Plaintiffs' proposed claims are barred by the litigation privilege.

The Connecticut Supreme Court "has established a rule of 'absolute immunity,'" also referred to as the "litigation privilege," which "protects the statements or actions that any individual makes, in the context of a judicial proceeding, from giving rise to most types of tort claims."  *Costello v. Wells Fargo Bank Nat'l Ass'n*, No. 16-CV-1706 (VAB), 2017 WL 3262157, at *14 (D. Conn. July 31, 2017) (citing *MacDermid, Inc. v. Leonetti*, 310 Conn. 616, 627, 79 A.3d 60 (2013)), *aff'd*, 739 F. App'x 77 (2d Cir. 2018) (summary order).  "The purpose of affording absolute immunity to those who provide information in connection with judicial and quasi-judicial proceedings is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements."  *Scholz v. Epstein*, 266 A.3d 127, 133 (Conn. 2021).  Federal courts in Connecticut "routinely apply the state's litigation privilege to claims that challenge representations made in underlying state court litigation."  *Weldon v. MTAG Servs., LLC*, No. 3:16-CV-783 (JCH), 2017 WL 776648, at *10 (D. Conn. Feb. 28, 2017).

The litigation privilege applies to claims "premised on factual allegations that challenge the defendant's participation in a properly brought judicial proceeding." *Scholz*, 266 A.3d at 135. In applying the litigation privilege to such claims, the Connecticut Supreme Court has reasoned that these causes of action do not "involve consideration of whether the underlying purpose of the litigation was improper" and, as a result, they are "entitled to absolute immunity, even if the plaintiff alleges that the [defendant's] conduct constituted an improper use of the courts." *Id.* Relevant here, Connecticut courts have applied the litigation privilege to claims for both intentional and negligent infliction of emotional distress arising from judicial proceedings. *See Dorfman v. Smith*, 271 A.3d 53, 63 (Conn. 2022) (noting that "absolute immunity extends to an array of retaliatory civil actions," including "intentional infliction of emotional distress arising from statements made during judicial proceedings"); *Simms v. Seaman*, 69 A.3d 880, 907 (Conn. 2013) (holding that litigation privilege barred a plaintiff's claim of intentional infliction of emotional distress); *Stone v. Pattis*, 72 A.3d 1138, 1152 (Conn. App. Ct. 2013) ("We conclude . . . that the allegations supporting [the] claim of negligent infliction of emotional distress are based on communications protected by absolute immunity from suit.").

Here, Plaintiffs' proposed claims against the Howd Parties for negligent and intentional infliction of emotional distress are plainly barred by the litigation privilege. Plaintiffs' allegations against the Howd Parties include that Vossler concealed and destroyed evidence, *see* Am. Compl. at 28–29, presented a misleading photo of "exemplar packaging" at trial, *id.* ¶¶ 83–84, and misrepresented and belatedly disclosed additional insurance coverage, *id.* ¶¶ 85–86.[6] This alleged

---

[6] To the extent other allegations that appear in both Plaintiffs' amended complaint and proposed amended complaint can be construed as applying to the Howd Parties, claims pertaining to such allegations are barred by the litigation privilege for the same reasons Plaintiffs' claims against Signify are likewise barred by the litigation privilege, as discussed below with respect to Defendants' motion to dismiss. *See Dorfman*, 271 A.3d at 63 & n.3 (the policy considerations supporting the application of the litigation privilege "apply regardless of whether the action is against an attorney, party opponent, or witness"); *see also Simms*, 69 A.3d at 898 (noting that the common law litigation privilege protected all participants in the court system).

conduct unmistakably constitutes statements or actions made in the context of a judicial proceeding.  *See Bruno v. Travelers Cos.*, 161 A.3d 630, 637 (Conn. App. Ct. 2017) ("It is well settled that communications uttered or published in the course of judicial proceedings are absolutely privileged as long as they are in some way pertinent to the subject of the controversy." (brackets omitted)); *Tyler v. Tatoian*, 137 A.3d 801, 803 (Conn. App. Ct. 2016) (litigation privilege applied to claims "arising from communications made during the course of a prior litigation between the parties"); *see also Simms*, 69 A.3d at 906 (holding that "attorneys are protected by the litigation privilege against claims of fraud for their conduct during judicial proceedings"). Accordingly, the litigation privilege bars Plaintiffs' proposed claims for intentional and negligent infliction of emotional distress against the Howd Parties.  *See Stone*, 72 A.3d at 1152; *Dorfman*, 271 A.3d at 63; *see also id.* (noting that the Connecticut Supreme Court has articulated the policy rationales underlying the litigation privilege "in relation to a claim brought against an attorney for communications made during a judicial proceeding").

Plaintiffs' proposed "abuse of process" claims against the Howd Parties are the only remaining claims for the Court to consider with respect to the present motion to amend.  The Connecticut Supreme Court has "refused to apply absolute immunity to causes of action alleging the improper use of the judicial system," reasoning that such claims involve "the improper use of the courts 'to accomplish a purpose for which the courts were not designed.'"  *Scholz*, 266 A.3d at 135 (brackets omitted).  The litigation privilege therefore does not bar, for example, claims for abuse of process.  *See Dorfman*, 271 A.3d at 63.  The Connecticut Supreme Court has distinguished such claims from other claims, such as fraud, that do not challenge the purpose of underlying litigation.  In *Simms*, the court explained:

> Abuse of process claims must allege the improper use of litigation "to accomplish a purpose for which it was not designed." . . . In contrast, a claim of fraud, including

> the claim that the defendants in the present case deliberately concealed material
> evidence from the plaintiff and incorrectly portrayed the plaintiff's former spouse
> as economically disadvantaged, does not require consideration of whether the
> underlying purpose of the litigation was improper but, rather, whether an attorney's
> conduct while representing or advocating for a client during a judicial proceeding
> that was brought for a proper purpose is entitled to absolute immunity.

*Simms*, 69 A.3d at 546–47.  More recently, the court has elaborated that, for the litigation privilege

to apply, "it is not enough for the plaintiff to allege that the misconduct at issue constituted an

improper use of the judicial system, but, rather, the cause of action itself must challenge the

*purpose* of the underlying litigation or litigation conduct."  *Dorfman*, 271 A.3d at 66.

Plaintiffs cannot claim refuge in the abuse of process exception to the litigation privilege.

Although these claims are labeled as "abuse of process" claims, Plaintiffs do not sufficiently allege

that the Howd Parties improperly used any litigation or legal process to accomplish a purpose for

which it was not designed.  Here, in the purported "abuse of process" counts of their proposed

amended complaint, Plaintiffs allege that the Howd Parties "conspired to use, and did use, their

written discovery, depositions, and an authorized site inspection, which are discovery tools in

litigation, to destroy evidence, to prevent [Plaintiffs] from obtaining relevant evidence, to defeat

[Plaintiffs'] negligence claims, minimize a damage award, and/or to shift liability onto co-

defendants."  Am. Compl. at 29.  Plaintiffs also allege that Vossler belatedly disclosed evidence

and the existence of additional insurance coverage.  *See, e.g.*, *id.* ¶¶ 42, 85–86.  Although Plaintiffs

contend that the Howd Parties "engaged in this litigation misconduct primarily to accomplish an

improper purpose for which it was not designed," Am. Compl. at 29, this is merely a legal

conclusion masquerading as a factual one and, as a result, the Court need not accept it as true.  *See*

*Iqbal*, 556 U.S. at 678; *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).  Indeed,

Plaintiffs' factual assertions only allege an improper use of discovery tools in the lawsuit Plaintiffs

initiated, without specifically alleging that the Howd Parties initiated any legal process for an

improper *purpose.  See Tyler*, 137 A.3d at 808 (finding litigation privilege applicable after noting that the defendant "did not use a legal process against the plaintiffs in order to accomplish a purpose for which it was not designed; the defendant merely participated in the process initiated by the plaintiffs").   Plaintiffs' allegations that Defendants improperly used discovery tools, including written discovery, depositions, and a site inspection,[7] fall squarely within the scope of the litigation privilege.  *See Dorfman*, 271 A.3d at 69 ("To the extent the plaintiff's claim is premised on false statements contained in pleadings and documents related to the litigation—such as the allegedly false statements contained in the defendant's answer, special defense, and discovery responses—the privilege clearly applies."); *see also id.* at 67 ("A claim of abuse of process may be premised on the improper use of a particular judicial procedure.  But allegations of the improper use of judicial procedure do not satisfy the requirement that the plaintiff's cause of action must itself challenge the purpose of the underlying litigation or litigation procedure.").

The Court is unpersuaded by Plaintiffs' assertion that their abuse of process claims should proceed because the Howd Parties improperly asserted a "vexatious defense" in the underlying state court action.  At oral argument, Plaintiffs clarified that this purported "vexatious defense" was that Defendants and the Howd Parties knew that the product at issue in the state court action was shipped by Signify yet continued to deny this and blame other parties.  Plaintiffs conceded at oral argument, however, that they can point to no case in which a Connecticut court has extended the abuse of process exception to include the theory that a defendant improperly asserted a

---

[7] Even assuming the initiation of an inspection of property constitutes the initiation of a "legal process" for purposes of an abuse of process claim, Plaintiffs have failed to allege in their complaint or amended complaint that the Howd Parties—or any Defendants, for that matter—initiated the inspection.  *See* Am. Compl. ¶ 47 (merely alleging that "[t]he parties agreed on the scope of the inspection two weeks in advance").   At oral argument, Plaintiffs simply reiterated that the parties agreed to the inspection in relation to the state court litigation.  As for the allegedly false deposition testimony, Plaintiffs appear to concede that they, and not the Howd Parties or any Defendants, initiated some, if not all, of the depositions at issue.  *See* Am. Compl. ¶ 68 (alleging that "[d]eposition dates were requested" for Byrd and Fritz after Plaintiffs discovered green banding in Girardi's photographs).

vexatious defense.  Indeed, Connecticut case law seems to suggest that such a theory could *not* be advanced to successfully evade the litigation privilege.  *See id.* at 68 (finding a plaintiff's claims based on false statements made in a defendant's pleadings in an underlying action to be barred by the litigation privilege even where she claimed that the defendant "knowingly and intentionally engage[d] in dishonest and sinister litigation practices by taking legal positions that were without factual support" (cleaned up)); *Tyler*, 137 A.3d at 808 (litigation privilege barred claims alleging "an abuse of the legal system" where "the defendant merely participated in the process initiated by the plaintiffs").  In any event, Plaintiffs' failure to direct the Court to case law demonstrating that they have presented a cognizable claim leaves the Court without a basis to extend the abuse of process exception to Connecticut's state law litigation privilege to encompass Plaintiffs' novel theory.[8]

In addition, Plaintiffs' argument that the litigation privilege is not applicable because they have alleged improper *conduct*, rather than improper *communications*, in the underlying state court action is squarely foreclosed by Connecticut law.  Connecticut courts do not "speak about the privilege solely in terms of communications, but also in terms of *conduct* in the course of judicial or quasi-judicial proceedings."  *Deutsche Bank AG v. Vik*, 281 A.3d 12, 22 (Conn. App. Ct. 2022); *see Tyler*, 137 A.3d at 808 (litigation privilege applied despite plaintiffs' attempt to "characterize[] the defendant's allegedly fraudulent *conduct* as an abuse of the legal system" (emphasis added)). *Simms*, 69 A.3d at 546–47 (claim that defendants "deliberately concealed material evidence from the plaintiff" subject to litigation privilege); *see also Bos. Prop. Exch. Transfer Co. v. Merrill*

---

[8] At oral argument, Plaintiffs argued that their abuse of process claims should be permitted to proceed because Connecticut General Statutes § 52-568 permits damages awards against "any person who . . . asserts a defense to any civil action or complaint commenced and prosecuted by another . . . without probable cause [and/or] . . . with a malicious intent unjustly to vex and trouble such other person."  This statute, however, is referenced nowhere in Plaintiffs' complaint, proposed amended complaint, or briefing on either of the present motions.  The Court will not countenance Plaintiffs' decision to raise this statute for the first time at oral argument, and it will address it no further.

*Lynch, Pierce, Fenner & Smith, Inc.*, No. X04HHDCV116026660S, 2013 WL 2383606, at *7 (Conn. Super. Ct. May 13, 2013) ("[U]nder Connecticut law, the court would be required to apply the privilege to strike the plaintiff's fraud, spoliation and conspiracy claims.").  Accordingly, allegedly improper conduct clearly can implicate the litigation privilege, and Plaintiffs' attempt to end-run the litigation privilege by distinguishing between conduct and communications thus fails.

For these reasons, the Court finds that Plaintiffs' proposed new claims against the Howd Parties for intentional and negligent infliction of emotional distress and abuse of process are barred by the litigation privilege.

Separately, the Court notes that, to the extent Plaintiffs' proposed amendments pertain to Defendants already named in Plaintiffs' operative complaint, such amendments are likewise futile. As explained below, the Court concludes that it lacks personal jurisdiction over the Individual Defendants.  In their proposed amended complaint, Plaintiffs have not attempted to assert any new allegations to buttress their jurisdictional allegations with respect to the Individual Defendants. Indeed, Plaintiffs offer no rebuttal to Defendants' assertion that their proposed amendments contain no revisions to the complaint's jurisdictional allegations, *see* ECF No. 34 at 21–22.  Nor have Plaintiffs requested to assert new allegations that would alter the Court's conclusion below that their claims against Signify are barred by the litigation privilege.  Accordingly, to the extent Plaintiffs' new allegations pertain to their claims against Signify and the Individual Defendants, their request to amend is likewise futile.

Therefore, the Court finds that Plaintiffs' proposed amendments to their complaint are futile.[9]

### 2. Fundamental Fairness

The futility of Plaintiffs' proposed amendments provides an independent basis for denying their motion to amend, without reaching the fundamental fairness principles the Court must consider under section 1447(e).  The Court further notes, however, that even if amendment were not futile, principles of fundamental fairness would not favor permitting Plaintiffs to join the Howd Parties in this action.  As discussed, in assessing fundamental fairness, the Court considers:  "(1) any delay, as well as the reason for delay, in seeking joinder; (2) resulting prejudice to [the] defendant; (3) [the] likelihood of multiple litigation; and (4) [the] plaintiff's motivation for the amendment." *McWilliams*, 2022 WL 1718037, at *5.

The first factor—Plaintiffs' delay in seeking joinder and the reason for that delay—weighs against joinder.  Although the delay between Plaintiffs' filing of this action in August of 2022 and their request for joinder in November of 2022 is not particularly lengthy, Plaintiffs do not dispute that they had knowledge of at least some of their claims against the Howd Parties when they initiated this action.  Instead, Plaintiffs assert that they *chose* not to assert such claims in their initial complaint because doing so likely would have caused the state court trial to be continued, and because they were concerned about the ethical implications of raising such claims against their opposing counsel before or during the state court trial.  These assertions, however, do not explain why Plaintiffs chose to initiate this suit prior to the conclusion of the state court trial, rather than

---

[9] Plaintiffs assert that their intentional and negligent spoliation claims, which they had previously committed to withdrawing because of their success on the merits in the state court action, ECF No. 27 at 6, actually remain live because final judgment has still not been entered in the underlying action and an appeal is possible.  Because the Court never ordered these claims withdrawn, it will consider these claims in the portion of this ruling that discusses Defendants' motion to dismiss.

waiting and asserting all of their claims in a single action after trial concluded. Notably, the pendency of the state court trial did not dissuade Plaintiffs from asserting claims in this action against Signify, despite that Signify is a defendant in the state court action as well. Moreover, Plaintiffs provide no case law to support the proposition that a plaintiff's desire to reach resolution in a separate proceeding excuses the plaintiff's delay in seeking joinder of non-diverse parties. The first factor therefore weighs against joinder.

The Court next finds that the second factor, prejudice to Defendants, does not weigh heavily against joinder, given that Defendants have not made any arguments specific to this factor in their briefing.

The third factor—the likelihood of multiple litigation—weighs against permitting Plaintiffs to join the Howd Parties because there is little risk of multiple litigation in this case. As explained above, the Court has found that Plaintiffs' claims against the Howd Parties are futile. Moreover, in granting Defendants' present motion to dismiss as explained below, the Court will dismiss this action in full. As all claims brought in this action, operative and proposed, are legally insufficient, there is little risk that denial of joinder would spawn parallel suits.

As to the fourth factor, Plaintiffs' motivation for their proposed amendments, the Court has serious questions about why Plaintiffs proceeded with assertion of their claims in the sequence they did. *See Eureka V LLC v. Town of Ridgefield*, 289 F.R.D. 27, 33 (D. Conn. 2012) (inferring dilatory motive where, among other things, plaintiff sought leave to amend to assert claims that "relate[d] back to facts in existence when the case was filed"), *aff'd*, 535 F. App'x 41 (2d Cir. 2013) (summary order). Nonetheless, the Court will accept—for purposes of this analysis— Plaintiffs' representations that their request for joinder is not motivated by destroying diversity

jurisdiction in this action.[10]  Even accepting those representations and assuming that the request to add the Howd Parties is made in good faith, principles of fundamental fairness do not, on balance, favor granting Plaintiffs' request for joinder.  Accordingly, even if Plaintiffs' request to amend were not futile, the Court would decline to exercise its discretion to permit joinder of the Howd Parties in this action.

For these reasons, Plaintiffs' motion to amend their complaint is DENIED.

## IV.   DEFENDANTS' MOTION TO DISMISS

Having denied Plaintiffs' motion to amend, the Court next assesses Defendants' dismissal motion as applied to Plaintiffs' original, operative complaint.  Defendants advance two grounds for dismissal of this action.  First, they assert that Plaintiffs' claims against the Individual Defendants must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) because the Court lacks personal jurisdiction over these Defendants.  Second, Defendants assert that all of Plaintiffs' claims are subject to dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons below, the Court agrees that the claims against the Individual Defendants must be dismissed for lack of personal jurisdiction, and that the remaining claims against Signify are barred by the litigation privilege.  Accordingly, Defendants' motion to dismiss is GRANTED in full.

### A.  Individual Defendants

The Court begins by dismissing Plaintiffs' claims against the Individual Defendants for lack of personal jurisdiction.

---

[10] In light of the Court's assumption for purposes of this analysis that Plaintiffs have acted in good faith in requesting to amend, the Court need not reach the parties' dispute—discussed both in Plaintiffs' briefing and at oral argument—regarding whether Defendants are attempting to advance a claim of fraudulent joinder with respect to this fourth factor and should therefore be required to meet the burden for alleging such a claim.

### 1.   *Federal Rule of Civil Procedure 12(b)(2)*

Federal Rule of Civil Procedure 12(b)(2) permits a defendant to raise lack of personal jurisdiction as a defense by motion before a responsive pleading.  The plaintiff bears the burden of establishing personal jurisdiction over the defendant.  *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 728 (2d Cir. 2012).  The showing a plaintiff must make to defeat a defendant's claim that the Court lacks personal jurisdiction over it "varies depending on the procedural posture of the litigation." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013).  While a plaintiff has the "ultimate burden" of establishing jurisdiction over a defendant by a preponderance of the evidence, until an evidentiary hearing is held, the plaintiff "need make only a *prima facie* showing by its pleadings and affidavits that jurisdiction exists."  *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986).  This *prima facie* showing requires "an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).  In considering whether a plaintiff has made such a *prima facie* showing, the pleadings and any affidavits submitted "are construed in the light most favorable to [the] plaintiff and all doubts are resolved in its favor." *CutCo Indus., Inc*, 806 F.2d at 365.[11]

"Personal jurisdiction over a defendant in a diversity action is determined by the law of the forum in which the court sits."  *Id.*  Under both Connecticut Supreme Court and Second Circuit precedent, determining whether a court has personal jurisdiction requires a two-step analysis:  first, the Court must determine whether Connecticut's long-arm statute supports the Court's exercise of

---

[11] In their opposition to Defendants' present motion, Plaintiffs state that they "request an evidentiary hearing to meet their burden on [their] claims, should the Court find the four corners of [their] complaint are insufficient to withstand [Defendants'] Motion to Dismiss." ECF No. 27 at 7.  Plaintiffs provide no context regarding what they would seek to present at an evidentiary hearing; nor do they specify which of Defendants' arguments they would seek to address at such a hearing.  Accordingly, Plaintiffs' request for an evidentiary hearing is denied.

personal jurisdiction over the foreign defendant; second, the Court must determine whether such exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. *Samelko v. Kingstone Ins. Co.*, 184 A.3d 741, 748 (Conn. 2018) (in assessing a motion to dismiss for lack of personal jurisdiction, the trial court must first decide whether the state long-arm statute "authorizes the assertion of jurisdiction" over the defendant and, if so, then decide whether the exercise of jurisdiction over the defendant "would violate constitutional principles of due process"); *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163–64 (2d Cir. 2010) (similar).

Connecticut General Statutes § 52-59b is the provision of Connecticut's long-arm statute that governs personal jurisdiction in suits against foreign individuals.  That section, in pertinent part, provides that "a court may exercise personal jurisdiction over any nonresident individual . . . who in person or through an agent":

    (1) Transacts any business within the state;

    (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act;

    (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce;

    (4) owns, uses or possesses any real property situated within the state; or

    (5) uses a computer, as defined in subdivision (1) of subsection (a) of section 53-451, or a computer network, as defined in subdivision (3) of subsection (a) of said section, located within the state.

*Id.* § 52-59b(a).

Here, although their briefing is difficult to follow, Plaintiffs appear to be asserting that the Court may exercise jurisdiction over the Individual Defendants pursuant to sections 52-59b(a)(1), 52-59b(a)(2), and 52-59b(a)(3)(A) and (B).[12]

### 2. Section 52-59b(a)(1)

First, section 52-59b(a)(1) does not provide a basis for exercising jurisdiction over the Individual Defendants in this action.

Section 52-59b(a)(1) "authorizes jurisdiction over nonresidents who transact any business within the state provided that the cause of action arises out of such transaction." *New London Cnty. Mut. Ins. Co. v. Nantes*, 36 A.3d 224, 230 (Conn. 2012). An individual transacts business under this section by engaging in "a single purposeful business transaction." *Id.* at 231. In determining whether a defendant's contacts constitute the transaction of business within this state, Connecticut courts "do not resort to a rigid formula," but rather "balance considerations of public policy, common sense, and the chronology and geography of the relevant factors." *Solano v. Calegari*, 949 A.2d 1257, 1263 (Conn. App. Ct. 2008) (quoting, in part, *Zartolas v. Nisenfeld*, 184 Conn. 471, 474, 440 A.2d 179 (1981)).

In support of their assertion that section 52-59b(a)(1) applies in this action, Plaintiffs first argue that the Individual Defendants transacted business within Connecticut by serving as employees of Signify, which transacted business in this state. Plaintiffs, however, have not shown that any of the Individual Defendants, themselves, purposefully transacted business in this state.[13]

---

[12] Plaintiffs also reference section 52-59b(a)(5) in a parenthetical following their assertion that the Individual Defendants "utilized computer networks to electronically transmit fabricated evidence to Connecticut to retained counsel in [the state court action] for use at trial and in support of Signify's vexatious claims and defenses." ECF No. 27 at 9. Because Plaintiffs do not otherwise discuss section 52-59b(a)(5), and because the facts asserted in this argument find no basis in the complaint, the Court declines to address whether section 52-59b(a)(5) applies.

[13] Although each of the Individual Defendants avers that they visited Signify's warehouse in Norwich, Connecticut, Harbt Aff., ECF No. 14-2, ¶ 7; Byrd Aff., ECF No. 14-3, ¶ 6; Fritz Aff., ECF No. 14-4, ¶ 6, Plaintiffs do not argue that these visits provide a basis for exercising jurisdiction over these Defendants.

Instead, they argue that the Individual Defendants were aware that the state court action has been pending and that it arose out of a commercial transaction involving their employer. ECF No. 27 at 9. They further argue that the Individual Defendants transacted business in the state by "invok[ing] the benefits and protections of Connecticut's laws" when they traveled to this state to testify in the state court trial. *Id.* at 11.

Importantly, Plaintiffs have referenced no case law holding that an individual's act of testifying in Connecticut state court—let alone her mere *awareness* that her employer is involved in litigation in Connecticut state court—constitutes transacting business in Connecticut for purposes of section 52-59b(a)(1). Indeed, analogous case law suggests the opposite. *See LucidRisk, LLC v. Ogden*, 615 F. Supp. 2d 1, 6 (D. Conn. 2009) (rejecting plaintiff's argument "that the wrongful conduct of the defendants during the state court litigation should itself be a basis for the exercise of jurisdiction over them," and noting that "there are no decisions which hold that merely participating as a defendant in a state court civil suit . . . is 'transacting business' in Connecticut under its long-arm statute"); *cf. Drupals v. Mabey*, No. 3:13-CV-00404 (CSH), 2014 WL 3696374, at *4 (D. Conn. July 23, 2014) (defendant's testimony against plaintiff in Connecticut did not provide a basis for exercising jurisdiction under section 52-59b(a)(1) where that testimony was compelled by subpoena).

Plaintiffs assert that section 52-59b(a)(1) applies because the Individual Defendants have improperly attempted to rely on the so called "fiduciary shield doctrine." Where it is recognized, the fiduciary shield doctrine may prevent a corporate employee from being subjected to suit in a foreign jurisdiction "when his only contacts with that jurisdiction have been undertaken on behalf of his corporate employer." *See Ferrara v. Munro*, 585 B.R. 269, 287 (D. Conn. 2018). Plaintiffs appear to be arguing that without the fiduciary shield doctrine, Signify's transactions can

automatically be imputed to the Individual Defendants, even without any specific allegations that the Individual Defendants themselves purposefully transacted business in this state. The Individual Defendants, in turn, disclaim reliance on the fiduciary shield doctrine, *see* ECF No. 30 at 10, n.6, and instead argue that Plaintiffs have failed to adequately allege that the Individual Defendants transacted business in Connecticut. The Court agrees with the Individual Defendants. Aside from their arguments regarding the Individual Defendants' participation in the state court trial, which the Court has already rejected, Plaintiffs fail to explain *how* the Individual Defendants transacted business in Connecticut under section 52-59b(a)(1). Thus, section 52-59b(a)(1) does not provide a basis for the Court to exercise personal jurisdiction over the Individual Defendants in this action.

### 3. *Section 52-59b(a)(2)*

Section 52-59b(a)(2), concerning commission of a tortious act within Connecticut, is likewise inapplicable in this case. In support of their assertion that section 52-59b(a)(2) applies, Plaintiffs argue in their briefing that the Individual Defendants "utilized computer networks to electronically transmit fabricated evidence to Connecticut to retained counsel in [the state court action] for use at trial and in support of Signify's vexatious claims and defenses." ECF No. 27 at 9. As Defendants correctly point out, however, this assertion is presented without citation, and it finds no basis in the pleadings or, for that matter, any other materials accompanying Plaintiffs' briefing. Accordingly, section 52-59b(a)(2) does not provide a basis for the Court to exercise personal jurisdiction over the Individual Defendants. *See O'Grady v. BlueCrest Cap. Mgmt. LLP*, 111 F. Supp. 3d 494, 503 (S.D.N.Y. 2015) ("[The plaintiff] may not use an opposition to a motion to dismiss to amend his pleadings." (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)), *aff'd*, 646 F. App'x 2 (2d Cir. 2016) (summary order)).

### 4. *Section 52-59b(a)(3)*

Plaintiffs' attempt to invoke section 52-59b(a)(3) also fails.  Under that section, the Court would have jurisdiction over a person who committed a tortious act outside of Connecticut that causes injury inside Connecticut, if certain requirements are met.  For purposes of section 52-59b(a)(3)(A), Plaintiffs argue that the Individual Defendants "regularly conducted and solicited business in Connecticut, which included the maintenance of an ongoing commercial relationship with [Cruz's] employer, Rexel USA, Inc."  ECF No. 27 at 9.  For purposes of section 52-59b(a)(3)(B), Plaintiffs assert that—given the Individual Defendants' "awareness of the allegations and discovery demands" in the state court action, "which they participated in on an ongoing basis,"—the Individual Defendants "engaged in a 'persistent course of conduct' in furtherance of Signify's and their own personal financial interests."  *Id.* at 10–11.  Again, these assertions are presented without citation to Plaintiffs' pleadings or any other materials in the record.  For example, Plaintiffs cite nothing in support of their bald assertion that the Individual Defendants regularly conducted or solicited business in Connecticut or maintained the business relationship between Signify and Rexel USA, Inc.  Nor have Plaintiffs provided any basis in case law for their assertion that the Individual Defendants' participation in the state court action constituted a persistent course of conduct in Connecticut.  Therefore, section 52-59b(a)(3) does not provide a basis for the Court to exercise jurisdiction over the Individual Defendants in this case.

### 5. *In sum*

In sum, Plaintiffs have failed to make out a *prima facie* case that Connecticut's long-arm statute provides a basis for exercising jurisdiction over the Individual Defendants.  Having found that exercising jurisdiction over these Defendants is improper under Connecticut's long-arm

statute, the Court need not reach the question of whether personal jurisdiction would comport with due process.  *See Planned Furniture Promotions, Inc. v. City Antique, Inc.*, No. 3:14-CV-0279 MPS, 2014 WL 5481438, at *7 (D. Conn. Oct. 29, 2014) (declining to reach due process question where the plaintiff failed to sufficiently allege personal jurisdiction under Connecticut's long-arm statute).  Defendants Harbt, Fritz, and Byrd are therefore dismissed from this action.

        B.  <u>Defendant Signify</u>

Having dismissed the Individual Defendants from this action, the Court turns next to whether Plaintiffs' claims against Signify should be dismissed for failure to state a claim.  For the reasons below, the Court finds that Plaintiffs' claims against Signify are barred by the litigation privilege and therefore dismisses these claims pursuant to Rule 12(b)(6).

        *1.  Federal Rule of Civil Procedure 12(b)(6)*

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted.  When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully."  *Id.*  In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether

they plausibly give rise to an entitlement to relief." *Faber*, 648 F.3d at 104 (internal quotation marks omitted).

The Court, however, is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678.  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### 2.  Discussion

As discussed above, under Connecticut Supreme Court precedent, the litigation privilege "protects the statements or actions that any individual makes, in the context of a judicial proceeding, from giving rise to most types of tort claims." *Costello*, 2017 WL 3262157, at *14. Federal courts in Connecticut routinely apply this privilege to claims that challenge representations made in underlying state court litigation.  *See, e.g.*, *Weldon*, 2017 WL 776648, at *10.  For the reasons described below, each of Plaintiffs' claims against Signify is barred by the litigation privilege.[14]

---

[14] Defendants have not argued that the absolute immunity associated with the litigation privilege deprives the Court of subject matter jurisdiction.  Although the Connecticut Supreme Court has noted that absolute immunity implicates a Connecticut trial court's subject matter jurisdiction, *see Scholz*, 266 A.3d at 132; *Dorfman*, 271 A.2d at 64–65, this Court agrees with Judge Meyer's recent holding in *Wang v. Delphin-Rittmon*, ___ F. Supp. 3d ___, 2023 WL 2624351, at *6 (D. Conn. Mar. 24, 2023), that "[a] defense of absolute . . . immunity has nothing to do with a federal court's jurisdiction."  *See also In re Stock Exchs. Options Trading Antitrust Litig.*, 317 F.3d 134, 151 (2d Cir. 2003) ("Most immunities are affirmative defenses. . . . Affirmative defenses can be waived; lack of subject matter jurisdiction cannot be waived." (internal citations omitted)); *but see Sargent v. Town of Westport*, No. 3:14-CV-352 (JCH), 2017 WL 4157528, at *14 (D. Conn. Sept. 19, 2017) ("[B]ecause the litigation privilege concerns a court's subject matter jurisdiction, the court must consider whether it applies to the claims against all of the lawyer defendants.").  The Court will therefore assess Signify's assertion of the litigation privilege under Rule 12(b)(6).

At the outset, Plaintiffs' claims for "abuse of process" against Signify mirror the proposed claims for abuse of process against the Howd Parties in Plaintiffs' proposed amended complaint. Accordingly, these claims are subject to the litigation privilege for the same reasons that Plaintiffs' proposed claims against the Howd Parties are subject to the privilege. Specifically, "it is not enough for the plaintiff to allege that the misconduct at issue constituted an improper use of the judicial system, but, rather, the cause of action itself must challenge the *purpose* of the underlying litigation or litigation conduct." *Dorfman*, 271 A.3d at 66. Because Plaintiffs do not adequately allege that Signify "use[d] a legal process against [Plaintiffs] in order to accomplish a purpose for which it was not designed," their purported claims for abuse of process are barred by the litigation privilege. *See, e.g.*, *Tyler*, 137 A.3d at 804, 808 (litigation privilege barred claims alleging that the defendant's "differing testimony at his deposition and at trial constituted a fraud").

Moreover, for the reasons discussed above with respect to Plaintiffs' motion to amend, Plaintiffs' argument that the litigation privilege does not apply because the claims in the complaint are founded on litigation *misconduct*, rather than communications or statements, must fail. As noted, Connecticut courts apply the litigation privilege to both communications and conduct. *See Deutsche Bank AG*, 281 A.3d at 22; *Tyler*, 137 A.3d at 808. Thus, Plaintiffs' assertion that the litigation privilege does not apply because they have alleged that Signify "destroyed, fabricated, and concealed *physical* evidence," ECF No. 27 at 15–16, is unpersuasive, *see Simms*, 69 A.3d at 546–47 (claim that defendants "deliberately concealed material evidence from the plaintiff" subject to litigation privilege).

Plaintiffs offer no additional arguments in their briefing to rebut Defendants' assertions that the litigation privilege bars Plaintiffs' claims against Signify for intentional and negligent spoliation of evidence, negligence, negligent and intentional infliction of emotional distress,

*respondeat superior*, fraud, CUTPA violations, bad faith, and conspiracy.  Accordingly, in light

of the Connecticut case law applying the litigation privilege to these claims, the Court dismisses

each of these claims as barred by absolute immunity.[15]  *See Simms*, 69 A.3d at 546–47 (applying

litigation privilege to claim for fraud); *Dorfman*, 271 A.3d at 75 (applying litigation privilege to

claim for breach of the implied covenant of good faith and fair dealing); *Bruno*, 161 A.3d at 634–

35, 638 (trial court properly found that claims for negligent and intentional infliction of emotional

distress, CUTPA violations, vicarious liability, and negligence, all of which were based on

statements made and letters produced at a state court hearing, were barred by the litigation

privilege); *Stone*, 72 A.3d at 1151–52 (litigation privilege applied to claim for negligent infliction

of emotional distress, and to "allegations of various conspiracies" regarding "the subpoenaing of

witnesses" and "erroneous statements of fact" to the court); *Bos. Prop. Exch. Transfer Co.*, 2013

WL 2383606, at *7 ("[U]nder Connecticut law, the court would be required to apply the privilege

to strike the plaintiff's fraud, spoliation and conspiracy claims."); *Harvin v. Yale New Haven

Health Servs. Corp.*, No. HHD CV17-5045594S, 2023 WL 370701, at *3 (Conn. Super. Ct. Jan.

17, 2023) ("The Superior Courts have . . . recognized that the litigation privilege applies to claims

of negligence." (cleaned up)); *see also Harsco Corp. v. Segui*, 91 F.3d 337, 349 (2d Cir. 1996)

---

[15] Defendants do not cite any Connecticut case law expressly addressing whether claims for negligent spoliation are barred by the litigation privilege; this may be because there is no consensus on whether Connecticut recognizes a cause of action for negligent spoliation.  *Cambridge Mut. Fire Ins. Co. v. Fox Heating Serv., Inc.*, No. TTDCV136006920S, 2014 WL 1345316, at *5 (Ct. Super. Ct. Mar. 11, 2014).   Defendants nonetheless contend that the litigation privilege should apply to claims for negligent spoliation because such claims are akin to claims for concealment of evidence, intentional spoliation of evidence, and negligence.  ECF No. 14 at 29.  Because Plaintiffs stated in their opposition to Defendants' present motion that they were withdrawing their spoliation claims, they did not respond to Defendants' argument that negligent spoliation claims should be barred by the litigation privilege.  Then, although they stated in their reply in support of their motion to amend that they were once again attempting to proceed with their spoliation claims, Plaintiffs *still* did not offer any rebuttal to Defendants' arguments on this point.  The Court finds Defendants' arguments compelling and, given Plaintiffs' failure to respond to these arguments, the Court considers Plaintiffs to have conceded this point.

("[T]here being no surviving underlying theory of liability, the respondeat superior claims were . . . properly dismissed.").

For these reasons, Defendants' motion to dismiss is GRANTED in full.

## V.       CONCLUSION

For the reasons described herein, Plaintiffs' motion to amend is DENIED, and Defendants' motion to dismiss is GRANTED.  The Clerk is directed to close this case.

**SO ORDERED** at Hartford, Connecticut, this 17th day of May, 2023.

  */s/ Sarala V. Nagala*  
SARALA V. NAGALA  
UNITED STATES DISTRICT JUDGE